UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIGUEL LOPEZ LUVIAN,<br>    Plaintiff,<br>  v.<br>PAMELA JO BONDI, et al.,<br>    Defendants. | Case No. 25-cv-04035-TLT<br><br>**ORDER GRANTING MOTION FOR TEMPORARY RESTRAINING ORDER**<br>Re: ECF 8 |

We are a country of immigrants; a land where "all of us . . . are descended from immigrants and revolutionists." FRANKLIN D. ROOSEVELT, REMARKS TO THE DAUGHTERS OF THE AMERICAN REVOLUTION (1938). This nation once welcomed the huddled masses that sought to be free, the tired that sought refuge in our shores. Over the course of history, however, we've turned our back to this foundational principle—too often when it was needed most. *See, e.g.*, *Korematsu v. United States*, 323 U.S. 214 (1944), *abrogated by Trump v. Hawaii*, 585 U.S. 667 (2018). The facts of this case highlight one of those moments. The inequities seep from the pages, staining every word.

During the Japanese internment of the 1940s, Japanese Americans were faced with "mass evacuation[s]." *Id.* at 240 n.12. Plaintiff has similarly been "evacuated" from his family by Immigration and Custom Enforcement ("ICE"). ECF 8-2, Declaration of Rosa Marie Lopez ("Lopez Decl."), at 1. Plaintiff was captured by ICE during a routine immigration check-in. *Id.* He is currently interned at Golden State Annex in McFarland, California. ECF 8, at 1. Plaintiff is subject to a final order of removal, and he could be deported from the United States at any time. *Id.*

Plaintiff has lived in the United States for 27 years, has no criminal record, resides with his wife and three children in Livermore, California, and has been gainfully employed as a welder at a local winery for over two decades. ECF 1, ¶ 19; *see also* ECF 8-3 (community letters in support). He embodies the spirit of citizenship.

Before the Court is Plaintiff's motion for temporary restraining order, seeking to stay the removal of Plaintiff from the United States to Mexico pending a resolution of his case on the merits under the Administrative Procedure Act ("APA"). ECF 8. This Court need not generate judicial consent like shameful legacy of *Korematsu*. After review and consideration of the motions, briefings, attachments and exhibits thereto, the Court **GRANTS** the motion for temporary restraining order.

The Court **MAINTAINS** its in-person hearing on June 12, 2025, at 11:00 a.m. as a status conference. At the status conference, the parties must answer the following questions:

1. What is Plaintiff's current location and status?
2. Why was Plaintiff detained during his immigration check-in?
3. What clear congressional authorization can Defendants point to for non-reviewable authority of termination of removal proceedings?
4. At what age did Plaintiff enter the United States?
5. What are the circumstances surrounding Plaintiff entering the United States?
6. The Court will ask the parties to confirm that the Plaintiff has not suffered any infraction, misdemeanor, or criminal offense of any kind.

**I.   BACKGROUND**

On June 3, 2025, Plaintiff was detained by ICE during a routine immigration check-in. ECF 8-2, Lopez Decl., at 1. He is currently interned at Golden State Annex in McFarland, California. ECF 8, at 1.

Plaintiff's situation stems from his efforts to obtain permanent resident status. ECF 1, ¶ 19. Plaintiff is a 48-year-old native and citizen of Mexico who has lived in the United States for more than 27 years. *Id.* He resides with his United States citizen wife and their three children in

2

Livermore, California. *Id.*; *see* ECF 8-1, Declaration of Saad Ahmad ("Ahmad Decl."), at 1. He has been gainfully employed as a welder at a local winery for over two decades. ECF 1, ¶ 19.

On February 15, 2007, Plaintiff filed Form I-485, application for adjustment of status, with the Citizenship & Immigration Services ("USCIS"). *Id.* ¶ 20. USCIS denied Plaintiff's application for adjustment of status. *Id.* ¶ 21. It determined that he was ineligible because he had made a false claim to U.S. citizenship in attempting to enter the United States years earlier. *Id.*

Department of Homeland Security ("DHS") initiated removal proceedings by serving Plaintiff with a Notice to Appear that charged him with removal as a noncitizen lacking a valid immigrant visa or entry document, and for making a false claim to United States citizenship. *Id.* Plaintiff conceded removability on the former charge but denied removability on the later charge. *Id.*

He applied for cancellation of removal. *Id.* On January 22, 2008, the DHS filed a motion to dismiss removal proceedings with the Immigration Court arguing that the Notice to Appear was "improvidently issued" under 8 C.F.R. § 239.2(a)(6) because Plaintiff had been previously removed from the United States pursuant to a valid removal order. *Id.* ¶ 22. On March 8, 2008, the Immigration Judge ("IJ") at the San Francisco Immigration Court denied the DHS's motion to dismiss because she determined that the DHS had not provided a valid reason under the regulations for requesting dismissal of the proceedings. *Id.* ¶ 23. The DHS renewed its motion and the IJ again denied it. *Id.* ¶¶ 24–25.

On November 5, 2012, after an evidentiary hearing, the IJ granted Plaintiff's application for cancellation of removal as a nonpermanent resident noncitizen under Section 1229b(b)(1). *Id.* ¶ 26.

DHS appealed the IJ's decision to the Board of Immigration Appeals (the "BIA"). *Id.* ¶ 27. On October 23, 2014, the BIA sustained DHS's administrative appeal from the IJ's decision and dismissed Plaintiff's removal proceedings. *Id.* On November 1, 2016, an ICE officer served Plaintiff with a Notice of Intent/Decision to Reinstate Prior Order ("Form I-871"). *Id.* ¶ 28.

Plaintiff filed a timely petition for review of his reinstated removal order with the Ninth Circuit in which he challenged the BIA's dismissal of his removal proceedings. *Id.* ¶ 29. The

Ninth Circuit held that the court lacked jurisdiction under 8 U.S.C. § 1252(a)(5) because the BIA's decision was not a removal order. *See Lopez v. Garland*, 40 F.4th 996, 1001 (9th Cir. 2022). On May 15, 2023, the Supreme Court denied the writ of certiorari from the judgment of the United States Court of Appeals for the Ninth Circuit. *Id.* ¶ 33.

On May 8, 2025, Plaintiff filed the instant action against Attorney General Pamela Bondi and DHS Secretary Kristi Noem. ECF 1. Plaintiff asserts (1) violation of the Administrative Procedures Act ("APA"), (2) violation Plaintiff's right to due process under the Fifth Amendment of the Constitution, (3) injunctive relief, and (4) relief under the Declaratory Judgment Act. *Id.* ¶¶ 34–42.

On June 6, 2025, Plaintiff filed a motion for temporary restraining order, seeking to stay the removal of Plaintiff from the United States to Mexico pending a resolution of his case on the merits. ECF 8. The Court issued an order setting briefing schedule and hearing. ECF 11.

## II. LEGAL STANDARD

"A party may seek a temporary restraining order to preserve the status quo and prevent irreparable harm until a preliminary injunction hearing may be held." *Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, No. 25-CV-03698, 2025 WL 1358477, at *6 (N.D. Cal. May 9, 2025). In considering whether to stay a removal, "a court considers four factors: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 433 (2009) (internal quotation marks omitted); *see Dhillon v. Mayorkas*, No. 10-cv-0723, 2010 WL 1338132, at *9 (N.D. Cal. Apr. 5, 2010) (applying *Nken* factors to request for temporary restraining order).

The stay applicant "bears the burden of showing" that the court should exercise its discretion to award this extraordinary form of equitable relief. *Nken*, 556 U.S. at 433–34. "There is substantial overlap between these and the factors governing preliminary injunctions, . . . not because the two are one and the same, but because similar concerns arise whenever a court order may allow or disallow anticipated action before the legality of that action has been conclusively

4

1    determined." *Id.* at 434 (citing *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24
2    (2008)).
3        The factors that are "most critical" in evaluating a request for a stay are the first and
4    second. *Id.* Once an applicant satisfies the first two factors, the court moves to the third and
5    fourth factors. *Id.* These factors merge if, as here, "the Government is the opposing party." *Id.*

## III.     DISCUSSION

    The Court will apply the *Nken* factors to determine whether to stay the deportation of Plaintiff.

### A.     Likelihood of Success

#### 1.     The Court May Consider Plaintiff's APA Claim

Plaintiff argues that this Court has authority to review the BIA's actions because there is no other adequate remedy in court. ECF 8, at 7. Plaintiff notes that he has no other avenue for relief because the Ninth Circuit declined to consider his challenge for lack of jurisdiction. *Id.* at 6 (citing *Lopez v. Garland*, 40 F.4th 996 (2022)).

The Court agrees. "Section 704 of the APA provides for judicial review of '[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court.'" *Int'l Bhd. of Teamsters v. United States DOT*, 861 F.3d 944, 952 (9th Cir. 2017). Plaintiff has no adequate remedy because, as explained by the Ninth Circuit, Plaintiff "seeks to create a *new* ground for judicial review." *Lopez*, 40 F.4th at 999 (emphasis added). This new ground and lack of Ninth Circuit oversight results in Plaintiff having no adequate remedy for review of the BIA's decision. The BIA thus has unfettered discretion, which contradicts the Immigration and Nationality Act's ("INA"), explicit requirement for judicial review of a BIA's decision. 8 U.S.C. § 1252(a)(5).

This "new" and unique posture distinguishes this case from Ninth Circuit precedent that generally precludes the Court's review of challenges connected to the substance of removal orders. *See Martinez v. Napolitano*, 704 F.3d 620, 623 (9th Cir. 2012); *Weyerhaeuser Co. v. U.S. Fish and Wildlife Service*, 586 U.S. 9, 23 (2018) (warning that "[a] court could never determine that an agency abused its discretion if all matters committed to agency discretion were unreviewable.").

5

At this stage of the proceedings, the Court follows the "long applied a strong presumption favoring judicial review of administrative action." *Mach Mining, LLC v. E.E.O.C.*, 575 U.S. 480, 489 (2015). The Court, as well as "Congress[,] knows" that "legal lapses and violations occur." *Id*.

The question now becomes whether the BIA's actions are "final" under the APA and, therefore, reviewable by this Court. *See Am. Fed'n of Gov't Emps.*, 2025 WL 1358477 at *20–21 ("Because [P]laintiff[] do[es] not allege that any action here was made reviewable by statute, the threshold question is whether the challenged actions constitute 'final agency action.'").

Here, the BIA's actions are "done and final." *Id.* The BIA terminated Plaintiff's removal proceeding and Plaintiff has no avenue for judicial review. ECF 8, at 7; *see Lopez*, 40 F.4th at 999 (finding that the *Court of Appeal* does not have jurisdiction over the termination of removal proceedings). The Court finds that it may consider Plaintiff's APA claim as it pertains to the termination of removal proceedings.

The Court next considers the likelihood of success of Plaintiff's APA claim.

**2. Plaintiff's APA Claim Has a Likelihood of Success**

The APA allows the Court to "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "A court may reverse an agency decision under the arbitrary and capricious standard 'only if the agency relied on factors Congress did not intend it to consider, entirely failed to consider an important aspect of the problem, or offered an explanation that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *2 Peaks Bikes LLC v. Mayorkas*, No. 24-cv-09518, 2025 WL 1357425, at *3 (C.D. Cal. Mar. 12, 2025) (quoting *Greater Yellowstone Coalition v. Lewis*, 628 F.3d 1143, 1148 (9th Cir. 2010)).

Here, the Ninth Circuit's choice to decline merit review of Plaintiff's petition effectively awarded the BIA with unheralded, non-reviewable authority to terminate deportation. Plaintiff appears to have no other avenue for review. Such an outcome surrenders judicial and

1  congressional authority to an agency with statutorily limited power. Thus, the BIA's claim to
2  unreviewable authority invites major questions.

3  "Where the statute at issue is one that confers authority upon an administrative agency,"
4  there are certain "'extraordinary cases' that . . . provide a 'reason to hesitate before concluding that
5  Congress' meant to confer such authority." *West Virginia v. Env't Prot. Agency*, 597 U.S. 697,
6  721 (2022) (quoting *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120,
7  159–60 (2000)). In such cases, the agency "must point to 'clear congressional authorization'" for
8  the agency action. *Id.* at 723 (quoting *Util. Air Regul. Grp. v. Env't Prot. Agency*, 573 U.S. 302,
9  324 (2014)). The major questions doctrine is rooted in "separation of powers principles and a
10  practical understanding of legislative intent." *Id.*

11  The major questions doctrine is analyzed under a two-prong framework. *State v. Su*, 121
12  F.4th 1, 14 (9th Cir. 2024). First, the Court asks "'whether the agency action is 'unheralded' and
13  represents a 'transformative expansion' in the agency's authority in the vague language of a long-
14  extant, but rarely used, statute." *Id.* (citing *West Virginia*, 597 U.S. at 724–25). Second, the Court
15  asks "if the regulation is of 'vast economic and political significance' and 'extraordinary' enough
16  to trigger the doctrine." *Id.* (citing *West Virginia*, 597 U.S. at 716, 721). "If both prongs are met,
17  the major questions doctrine applies, and [the Court] should greet the agency's assertion of
18  authority with 'skepticism' and require the agency to identify 'clear congressional authorization'
19  for its action." *Id.* (citing *West Virginia*, 597 U.S. at 724).

20  Based on the limited record, Plaintiff has met both prongs of the major questions doctrine.
21  The BIA claims to "unheralded" unreviewable authority as to the termination of deportation
22  proceedings. The BIA bases this authority on the extant statutes 8 U.S.C. §§ 1252(a)(5) and
23  1252(a)(9) which provide for judicial review of removal proceedings. Title 8 United States Code
24  § 1252(a)(5) provides:

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter, except as provided in subsection (e) of this section.

7

In addition, this code section contains a "zipper clause" that requires consolidation of all "questions of law and fact . . . arising from any action taken or proceeding brought to remove an [noncitizen]" into a petition for review before the appropriate court of appeals. 8 U.S.C. § 1252(b)(9). These statutes are silent as to the judicial review of the termination of deportation proceedings.

The BIA's claim to non-reviewable authority to terminate of deportation proceedings represents transformative expansion to its authority. The APA provides for judicial review to "final agency action for which there is no other adequate remedy in a court.'" *Int'l Bhd. of Teamsters*, 861 F.3d at 952. The BIA's claim to non-reviewable authority represents an extreme expansion of agency power. Accordingly, the Court finds the first prong of the major questions doctrine is met.

The Court moves to the second prong. Here, the BIA's claim to non-reviewable authority "is of 'vast economic and political significance' and 'extraordinary' enough to trigger the doctrine." *Su*, 121 F.4th at 14. With no avenue for judicial review, the BIA's claimed authority could result in the change of status for millions of noncitizens.

Courts have previously found that agency action that could result in the change of status for millions of noncitizens is extraordinary and of vast economic and political significance. For example, in *Texas v. United States* (*Texas I*), the Fifth Circuit determined whether DHS had the statutory authority to implement Deferred Action for Parents of Americans and Lawful Permanent Residents ("DAPA") program. *Texas v. United States*, 809 F.3d 134, 181–82 (5th Cir. 2015), *as revised* (Nov. 25, 2015). The DAPA program would result in the change of status of 4.3 million noncitizens. *Id.* at 181. The court found that this agency action was of "deep economic and political significance" that required clear congressional authorization. *Id.* The court, applying the *expressio unius est exclusio alterius* canon of construction, held that 8 U.S.C. § 1324a(h)(3) did not give DHS the authority to implement DAPA. *Id.* at 182–83.

Similarly, in *Texas v. United States* (*Texas II*), the Fifth Circuit turned to whether DHS has the statutory authority to implement the Deferred Action for Childhood Arrivals ("DACA") program. *Texas v. United States*, 50 F.4th 498, 526 (5th Cir. 2022). Because the DACA program

8

would result in the change of status of 1.3 million noncitizens, it was of "deep economic and political significance" that required clear congressional authorization. *Id.* (internal quotations omitted). Relying on *Texas I*, the Fifth Circuit again concluded that DHS did not have statutory authority to implement DACA. *Id.* at 527–28.

Here, the Court finds that the BIA's claim to non-reviewable authority is of vast economic and political significance and extraordinary enough to trigger the doctrine. Plaintiff has brought the action under APA because he has no other avenue for relief. Based on the limited record, the Court finds that 8 U.S.C. §§ 1252(a)(5) and 1252(a)(9) do not contain clear congressional intent to vest the BIA with unfettered, non-reviewable authority over the termination of deportation proceedings. The Court, therefore, greets this claim of authority with "skepticism." *Su*, 121 F.4th at 14. At this stage of the proceedings, Plaintiff has demonstrated a likelihood of success on his APA claim.

### B.  Plaintiff Will Experience Irreparable Harm Absent a Stay

Plaintiff must next show that he will be irreparably injured absent a stay. *Nken*, 556 U.S. at 433. Plaintiff cites to ICE's Facilitation of Return Policy ("Directive"). The Court takes judicial notice of this Directive. *See Cnty. of Santa Clara v. Trump*, 250 F. Supp. 3d 497, 524 n.9 (N.D. Cal. 2017) (taking judicial notice of ICE reports contained on official government websites). Under the directive, ICE will facilitate a deported noncitizen's return to the United States if the noncitizen's pending appeal before the U.S. Supreme Court or a U.S. court of appeals prevails. ECF 8, at 9. However, here, Plaintiff does not have a pending appeal before the U.S. Supreme Court or a U.S. Court of Appeals. Thus, if Plaintiff is deported, he will have no avenue of return to the United States.

Deportation may also result in the violation of Plaintiff's right to "stay and live and work in this land and freedom." *Landon v. Plascencia*, 459 U.S. 21, 34 (1982) (quoting *Bridges v. Wixon*, 326 U.S. 135 (1945)). His "interest here is, without question, a weighty one." *Id*. Plaintiff has a right to "not be separated from one's immediate family." *Ching v. Mayorkas*, 725 F.3d 1149, 1157 (9th Cir. 2013). Plaintiff's family would suffer extreme financial and emotional hardship if he is deported to Mexico. He has strong ties to his community and has no adverse

9

criminal history. Under these circumstances and based on the limited record, the Court finds that Plaintiff has demonstrated irreparable harm.

### C. Public Interest and Injury to the Government

The final two factors merge if the "the Government is the opposing party." *Nken*, 556 U.S. at 433. Although the government may an interest in the prompt execution of removal orders, there "is [also] a public interest in preventing [noncitizens] from being wrongfully removed . . . ." *Id.*

The Court is keenly aware of the realities that noncitizens face today. Here, Plaintiff was detained as he was actively complying with orders to check in with ICE, a requirement that he complied with for the last seventeen years. ECF 8-2, Lopez Decl., at 1. He had been attempting to gain immigration status for almost twenty years. *Id.* And for almost twenty-seven years, Plaintiff had been working and paying taxes. *Id.* He is more than his status—Plaintiff is a husband and father; a grandfather and uncle; a homeowner and taxpayer; and a colleague and friend. *See generally* ECF 8-2, Lopez Decl.; ECF 8-3 (community letters in support). Still, for ICE, all of Plaintiff's years of compliance was not enough.

This nation has experienced waves of exclusion that ripple to this day. Indeed, fear has been based on the color of one's skin and the assumed location of birth. The Court will not blink at the circumstances of today or yesterday. "No one benefits from ignorance." *Students of Fair Admissions, Inc. v. President and Fellows of Harvard Coll.*, 600 U.S. 181, 407 (2023) (Jackson, J., dissenting).

As shown here, the public interest would be served by requiring judicial oversight of BIA decisions that affect noncitizens. As shown in this case, Plaintiff: paid his taxes, paid his mortgage, provided for his family, worked for an employer, and served his community.

Accordingly, at this stage of the proceedings, the Court finds that the government and public interest in removal does not outweigh Plaintiff's showing for the first two factors.

### IV. CONCLUSION

For the reasons stated above, the Court **GRANTS** the motion for temporary restraining order. The Court **MAINTAINS** its in-person hearing on June 12, 2025, at 11:00 a.m. as a status conference. The Court shall inquire into Plaintiff's detention status and history.

1   Defendants and their officers, agents, servants, employees, attorneys, and all those who are
2   in active concert or participation with them are hereby **TEMPORARILY RESTRAINED** from
3   removing Plaintiff from the United States, until the merits of Plaintiffs' forthcoming motion for a
4   preliminary injunction is resolved.  **IT IS FURTHER ORDERED** that Defendants shall
5   immediately provide a copy of this Order to any person or entity that may be subject to any
6   provision of this Order, including their officers, agents, servants, employees, attorneys, and all
7   those who are in active concert or participation with them or have any involvement in the removal
8   of Plaintiff from the United States.

Plaintiff must file a motion for preliminary injunction by June 20, 2025.

This Order resolves ECF 8.

**IT IS SO ORDERED.**

Dated: June 7, 2025

_____
TRINA L. THOMPSON
United States District Judge