UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIGUEL LOPEZ LUVIAN,<br><br>   Plaintiff,<br><br>   v.<br><br>PAMELA JO BONDI, et al.,<br><br>   Defendants. | Case No. 25-cv-04035-TLT<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS**<br><br>Re: Dkt. No. 30 |

No matter his pathway to this country, once Miguel Lopez Luvian arrived on American soil, he was entitled to due process of law by the United States Constitution. *Plyler v. Doe*, 457 U.S. 202, 210 (1982). His removal could only be carried out according to the letter of the law. This fundamental principle ensures that "ours is a government of laws, not of men." *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 646 (1952) (Jackson, J., concurring).

Mr. Lopez Luvian spent more than 27 years living in the United States. He is a husband, a father, a grandfather, and a neighbor. He was a productive member of the Livermore community and an active parent in his children's schooling. In the dead of night between June 6, 2025 and June 7, 2025 and after years of following the rules, Mr. Lopez Luvian was forced onto a plane and relocated to Mexico. The government summarily denied Mr. Lopez Luvian an opportunity to raise an objection in court.

Due process, the protective gatekeeper of our Constitutional rights, dictates notice and the opportunity to be heard. Miguel Lopez Luvian deserves better from this government.[1] We all do.

---

[1] Plaintiff's counsel brought to this Court's attention a bill before Congress which recites that "[h]is family, employer, and community would be better served if Miguel Lopez Luvian were to return to his home in Livermore, California." *See* H.R. 5294, 119th Cong. (2025).

Before the Court is Defendants' motion to dismiss Plaintiff's complaint for lack of jurisdiction. ECF 30. After review and consideration of the briefing, the arguments in open court, and the subsequent filings, the Court **DENIES** Defendants' motion for the reasons recited below.

## I. BACKGROUND

### A. Procedural History

On May 8, 2025, Plaintiff filed the instant action against Attorney General Pamela Bondi and Department of Homeland Security ("DHS") Secretary Kristi Noem. ECF 1. Plaintiff alleges that the Defendants' decision to terminate his removal proceedings in 2014 constitute (1) a violation of the Administrative Procedures Act ("APA") and (2) a violation Plaintiff's right to due process under the Fifth Amendment of the Constitution. *Id*. ¶¶ 34–42.

On June 5, 2025, DHS began executing removal plans by booking Plaintiff for the next available removal itinerary scheduled for June 6, 2025. ECF 14 at 3. At approximately 12:30 p.m. on June 6, 2025, DHS booked Plaintiff out of the Golden State Annex detention center in McFarland California. *Id.*

On June 6, 2025, Plaintiff filed a motion for temporary restraining order, seeking to stay the removal of Plaintiff from the United States to Mexico pending a resolution of his case on the merits. ECF 8. On the same day, the Honorable District Judge Beth Labson Freeman (as duty judge) set a briefing schedule and hearing on Plaintiff's motion. ECF 11.

DHS completed Plaintiff's removal process at approximately 6:05 a.m. on June 7, 2025, when Plaintiff was released afoot in Mexico. ECF 14 at 3. Hours later, at 3:40 p.m. on June 7, 2025, this Court issued an order granting Plaintiff's motion and restraining Defendants from removing Plaintiff from the United States until the merits of Plaintiff's motion for preliminary injunction were resolved. ECF 12.

On June 10, 2025, the Court was notified that, in the hours between the Court's order setting a briefing schedule on Plaintiff's motion and the Court's order granting Plaintiff's temporary restraining order, Plaintiff's removal to Mexico had been completed. ECF 14. On the same day, the parties filed a stipulation to withdraw Plaintiff's motion for a temporary restraining order. *Id.* As a result of the motion being withdraw, the Court granted the parties' stipulation and

found that the requested relief was moot. ECF 17. No further emergency relief was requested. Thereafter, the Court set a briefing schedule on the Defendants' anticipated motion to dismiss.

Defendants filed the operative motion to dismiss on August 13, 2025. ECF 30. Plaintiff responded on September 10, 2025. ECF 36. Defendants filed a reply on September 24, 2025. ECF 40. The court held a hearing on Defendants' motion to dismiss on October 7, 2025. ECF 46.

### B. Factual Background

Plaintiff is a 48-year-old native and citizen of Mexico who had lived in the United States for more than 27 years. ECF 1 ("Compl.") ¶ 19. He was first apprehended by DHS in October 1996 near Otay Mesa, California. ECF 14 at 2. Shortly thereafter, an immigration judge ordered Plaintiff's removal and DHS removed Plaintiff from the United States. *Id.* In 1998, Plaintiff re-entered the United States without inspection at or near San Ysidro, California. *Id.*

On February 15, 2007, Plaintiff filed a Form I-485, application for adjustment of status, with the Citizenship & Immigration Services ("USCIS"). Compl. ¶ 20. USCIS denied Plaintiff's application for adjustment of status. *Id.* ¶ 21. It determined that he was ineligible because he had made a false claim to U.S. citizenship in attempting to enter the United States years earlier. *Id.*

In September 2007, Department of Homeland Security ("DHS") initiated removal proceedings by serving Plaintiff with a Notice to Appear that charged him with removal as a noncitizen lacking a valid immigrant visa or entry document, and for making a false claim to United States citizenship. *Id.* Plaintiff conceded removability on the former charge but denied removability on the later charge. *Id.* He subsequently applied for cancellation of removal. *Id.*

On January 22, 2008, the DHS filed a motion to dismiss removal proceedings with the Immigration Court arguing that the Notice to Appear was "improperly issued" under 8 C.F.R. § 239.2(a)(6) because Plaintiff had previously been removed from the United States pursuant to a valid removal order. *Id.* ¶ 22. On March 8, 2008, the Immigration Judge at the San Francisco Immigration Court, the Honorable Carol A. King ("Immigration Judge"), denied DHS's motion to dismiss because she determined that DHS had not provided a valid reason under the regulations for requesting dismissal of the proceedings. *Id.* ¶ 23. She found that DHS had made an informed choice in placing Plaintiff in removal proceedings and was not relying on any "misleading

3

information or "mistaken [legal] assumption" when it served Plaintiff with the Notice to Appear. *Id.* DHS renewed its motion on July 21, 2009. *Id.* ¶ 24. The Immigration Judge denied DHS's renewed motion on January 6, 2010, noting that DHS had "made a considered choice to begin [r]emoval [p]roceedings rather than reinstating the prior order since all the necessary information was at its fingertips when the choice was made." *Id.* ¶ 25.

On November 5, 2012, after an evidentiary hearing, the Immigration Judge granted Plaintiff's application for cancellation of removal as a nonpermanent resident noncitizen under Section 1229b(b)(1). *Id.* ¶ 26. The Immigration Judge found that Plaintiff's removal to Mexico would result in "exceptional and extremely unusual hardship" to his wife and children—specifically his then-11-year-old son who suffers from a learning disability and would experience severe emotional problems by Plaintiff's departure from the United States. *Id.*

DHS appealed the Immigration Judge's decision to the Board of Immigration Appeals (the "BIA"). *Id.* ¶ 27. On October 23, 2014, based on the existence of the prior removal order, the BIA sustained DHS's administrative appeal from the Immigration Judge's decision and dismissed Plaintiff's removal proceedings. *Id.* On November 1, 2016, an ICE officer served Plaintiff with a Notice of Intent/Decision to Reinstate Prior Order ("Form I-871") referencing the 1996 removal order. *Id.* ¶ 28.

Plaintiff filed a timely petition for review of his reinstated removal order with the Ninth Circuit in which he challenged the BIA's dismissal of his removal proceedings. *Id.* ¶ 29. The Ninth Circuit held that the court lacked jurisdiction under 8 U.S.C. § 1252(a)(5) because the BIA's decision was not a removal order and not reviewable in connection with reinstatement. *See Lopez v. Garland*, 40 F.4th 996, 1001 (9th Cir. 2022). On May 15, 2023, the Supreme Court denied the writ of certiorari from the judgment of the United States Court of Appeals for the Ninth Circuit. *Id.* ¶ 33.

Before his removal, Plaintiff resided in Livermore, California with his wife and their three children, all of whom are citizens of the United States. *Id.*; *see* ECF 8-2, Declaration of Rosa Maria Lopez ("Lopez Decl."), at 1. He was gainfully employed as a welder at a local winery for over two decades. Compl. ¶ 19. As noted above, the Court granted Plaintiff's motion seeking the

4

1   immediate cessation of his removal mere hours after DHS released Plaintiff in Mexico.  ECF 14 at
2   3–4.

## II.    LEGAL STANDARD

### A.    Rule 12(b)(1) Dismissal

A court must dismiss an action under Federal Rule of Civil Procedure 12(b)(1) when the court lacks proper subject matter jurisdiction.  "Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994).  "They possess only that power authorized by Constitution and statute[.]" *Id.*  "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements," which at the pleadings stage means "clearly . . . alleg[ing] facts demonstrating each element." *Spokeo, Inc. v. Robins* ("*Spokeo II*"), 578 U.S. 330, 337 (2016) (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

Generally, courts do not consider allegations beyond the four corners of the complaint for purposes of the merits of the motion to dismiss.  *In re Bare Escentuals, Inc. Sec. Litig.*, 745 F. Supp. 2d 1052, 1066 (N.D. Cal. 2010) (acknowledging the "general rule against referencing evidence outside the four corners of the complaint" at the motion to dismiss stage).  However, a challenge under Rule 12(b)(1) "can be either facial, confining the inquiry to allegations in the complaint, or factual, permitting the court to look beyond the complaint." *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003).  Accordingly, "when considering a motion to dismiss pursuant to Rule 12(b)(1) the district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).

## III.    DISCUSSION

Three years ago, the Ninth Circuit held that Plaintiff "Lopez [Luvian] seeks to create a new ground for judicial review in the reinstatement context beyond those we have previously recognized." *Lopez Luvian*, 40 F.4th at 997 (9th Cir. 2022).  The court found that it "lack[ed] jurisdiction to consider the merits of [Lopez Luvian's] petition," "because Lopez [Luvian]'s petition challenges only the BIA's earlier decision terminating his removal proceedings, which did

5

not result in a final removal order." *Id.* Defendants argue that the same result—a finding of lack of jurisdiction—is warranted here for three reasons: (1) Plaintiff's claims constitute an attack on DHS's reinstatement of a removal order which is barred by 8 U.S.C. §§ 1252(a)(5), 1252(b)(9), 1231(a)(5), and 1252(g); (2) Plaintiff's claims are not reviewable under the APA; and (3) Plaintiff's request for relief is moot.

For the reasons stated below, the Court finds that the "new ground for judicial review" articulated in Plaintiff's complaint—that is, challenging the authority of DHS to terminate removal proceedings beyond those procedural and substantive grounds enumerate in 8 C.F.R. § 239.2(a)—presents justiciable claims over which the Court has jurisdiction.

### A. The Immigration and Nationality Act Does Not Bar Judicial Review of Plaintiff's Due Process Claim

Defendants contends that the Immigration and Nationality Act strips the Court of jurisdiction over Plaintiff's claims because Plaintiff's claims (1) amount to an impermissible attack on DHS's reinstatement of his prior removal order under 8 U.S.C. §§ 1252(a)(5), 1252(b)(9), and 1231(a)(5), and (2) challenge a decision left to the discretion of the BIA under 8 U.S.C. § 1252(g). ECF 30 at 2. However, Plaintiff does not challenge the reinstatement of the removal order itself; Plaintiff seeks review of the BIA's legal authority to terminate his separate removal proceedings. ECF 36 at 15.

#### 1. 8 U.S.C. §§ 1252(a)(5), 1252(b)(9), and 1231(a)(5) Are Inapplicable Because Plaintiff Does Not Challenge His Removal Order

Defendants present two different arguments arising from three different statutory provisions: (1) 8 U.S.C. §§ 1252(a)(5) and 1252(b)(9) channel Plaintiff's petition to the Ninth Circuit, and (2) that 8 U.S.C. § 1231(a)(5) prohibits the relitigation of reinstated removal orders in this case. ECF 30 at 9. One thing is clear from these arguments: the parties are speaking past each other.

##### i. Plaintiff Seeks Review of a Decision Beyond the Scope of 8 U.S.C. §§ 1252(a)(5) and 1252(b)(9)

Defendants' argument that the federal court of appeals is the only avenue through which Plaintiff may seek relief would hold if Plaintiff were challenging his removal order itself.

1   However, Plaintiff's causes of action are distinct from those governed by statutory provisions
2   upon which Defendants rely.  ECF 36 at 15.

3   Titled "Exclusive means of review",  8 U.S.C. § 1252(a)(5) states: "[A] petition for review
4   . . . shall be the sole and exclusive means for judicial review of an order of removal . . . ."  8 U.S.C.
5   § 1252(b)(9) states that "[j]udicial review of all questions of law and fact, including interpretation
6   and application of constitutional and statutory provisions, arising from any action taken or
7   proceeding brought to remove an alien from the United States . . . shall be available only in
8   judicial review of a final order . . . ."  "Taken together, § 1252(a)(5) and § 1252(b)(9) mean that
9   any issue—whether legal or factual—arising from any removal-related activity can be reviewed
10  only through the [Petition for Review] process."  *See J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th
11  Cir. 2016) (cleaned up).

12  Defendants' reliance on 8 U.S.C. §§ 1252(a)(5) and 1252(b)(9) is misplaced.  As stated
13  above, 8 U.S.C. §§ 1252(a)(5) and 1252(b)(9) govern the review process for challenges to a
14  removal order itself.  *Nasrallah v. Barr*, 590 U.S. 573, 580 (2020) (finding 8 U.S.C. § 1252 (b)(9)
15  requires "challenges arising from the removal proceeding [to] be consolidated in a petition for
16  review and considered by the courts of appeals.").  Plaintiff makes no such challenge here.  ECF
17  36 at 15.  ("Plaintiff is not asking this Court to review or invalidate his order of removal.").
18  Instead, Plaintiff's complaint specifically challenges the authority of DHS to terminate his
19  removal proceedings as a threshold matter.  The "new" and unique posture of Plaintiff's claim
20  distinguishes this case from Ninth Circuit precedent that generally precludes the Court's review of
21  challenges connected to the substance of removal orders under 8 U.S.C. § 1252 (b)(9).  *See*
22  *Martinez v. Napolitano*, 704 F.3d 620, 623 (9th Cir. 2012) (finding that issues raised, or which
23  could have been raised, at removal proceedings were encompassed by 8 U.S.C. § 1252 (b)(9)).
24  Plaintiff's claims could not be raised at removal proceedings themselves—he had no removal
25  proceedings.  As Plaintiff notes, "[t]he Ninth Circuit did not review the BIA's decision, and no
26  other court upheld the validity of that decision." *Id.*  Plaintiff's challenges are independent of and
27  separate from the reinstatement of the removal order itself, and, therefore, his complaint falls
28  outside of the petition for review process prescribed by 8 U.S.C. §§ 1252(a)(5) and 1252(b)(9).

7

1   Accordingly, the Court finds that 8 U.S.C. §§ 1252(a)(5) and 1252(b)(9) do not bar this Court from reviewing Plaintiff's claims.

### ii.   8 U.S.C. § 1231(a)(5)

Defendant's remaining argument fairs no better. The reinstatement statute itself—8 U.S.C. § 1231(a)(5)—provides that a reinstated removal order "is not subject to being reopened or reviewed" and that the noncitizen "is not eligible and may not apply for any relief" from removal. The Ninth Circuit has held that § 1231(a)(5) "specifically bars relitigation of the merits of the reinstated removal order." *Villa-Anguiano v. Holder*, 727 F.3d 873, 877–78 (9th Cir. 2013). Again, Plaintiff is not asking the Court to review or invalidate his order of removal. ECF 36 at 15. Thus, the Court similarly finds that 8 U.S.C. § 1231(a)(5) is inapposite.

Accordingly, the Court finds that 8 U.S.C. § 1231(a)(5) do not bar this Court from reviewing Plaintiff's claims.

### 2.   8 U.S.C. § 1252(g) Does Not Grant Discretionary Authority to Terminate Removal Proceedings

Defendants' final argument under the Immigration and Nationality Act survives only if "[t]he Board's decision to terminate removal proceedings *implicates* the government's exercise of prosecutorial discretion to 'commence proceedings,' and subsection (g) precludes the Court's review of that decision." ECF 30 at 12 (emphasis added). The Court is not persuaded by Defendants' expansive reading of the term "commence proceedings," and, for the reasons stated below, finds that the decision to *terminate* removal proceedings does not encompass the same discretionary authority embodied in the power to *commence* removal proceedings.

"Where the statute at issue is one that confers authority upon an administrative agency," there are certain "'extraordinary cases' that . . . provide a 'reason to hesitate before concluding that Congress' meant to confer such authority." *West Virginia v. Env't Prot. Agency*, 597 U.S. 697, 721 (2022) (quoting *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 159–60 (2000)). In such cases, the agency "must point to 'clear congressional authorization'" for the agency action. *Id*. at 723 (quoting *Util. Air Regul. Grp. v. Env't Prot. Agency*, 573 U.S. 302, 324 (2014)). The major questions doctrine is rooted in "separation of powers principles and a

8

1  practical understanding of legislative intent." *Id*. The major questions doctrine is analyzed under a
2  two-prong framework. *State v. Su*, 121 F.4th 1, 14 (9th Cir. 2024). First, the Court asks
3  "'whether the agency action is 'unheralded' and represents a 'transformative expansion' in the
4  agency's authority in the vague language of a long extant, but rarely used, statute." *Id*. (citing
5  *West Virginia*, 597 U.S. at 724–25). Second, the Court asks "if the regulation is of 'vast economic
6  and political significance' and 'extraordinary' enough to trigger the doctrine." *Id*. (citing *West
7  Virginia*, 597 U.S. at 716, 721). "If both prongs are met, the major questions doctrine applies, and
8  [the Court] should greet the agency's assertion of authority with 'skepticism' and require the
9  agency to identify 'clear congressional authorization' for its action." *Id*. (citing *West Virginia*, 597
10  U.S. at 724).

11      8 U.S.C. § 1252(g) states that "no court shall have jurisdiction to hear any cause or claim
12  by or on behalf of any alien arising from the decision or action . . . to *commence proceedings*,
13  adjudicate cases, or execute removal orders against any alien under this chapter." (emphasis
14  added). Section 1252(g) was "directed against a particular evil: attempts to impose judicial
15  constraints upon prosecutorial discretion." *Reno v. American-Arab Anti-Discrimination Comm.*
16  ("*AADC*"), 525 U.S. 471, 485 n. 9 (1999). In *AADC*, the Supreme Court explained that with
17  respect to the "three discrete actions" identified in the text of Section 1252(g)—commencement of
18  proceedings, adjudication of cases, and execution of removal orders—Section 1252(g) strips
19  district courts of jurisdiction. *AADC*, 525 U.S. at 482.

20      The BIA does not wield the same discretionary authority to terminate removal proceedings
21  that it does to commence proceedings. Instead, 8 C.F.R. §§ 1239.2(c) and 239.2(a) enumerate the
22  specific permissible grounds for such a decision. Under 8 C.F.R. § 1239.2(c), once proceedings
23  have commenced, an immigration judge "may not terminate or dismiss [removal] proceedings for
24  reasons other than those expressly set out in [8 C.F.R. § 239.2(a)] . . ." *Matter of S-O-G- & F-D-
25  B-*, 27 I. & N. Dec. at 462; *also see Matter of W-C-B-*, 48 I. & N. Dec. at 122 (stating that a Notice
26  to Appear cannot be dismissed absent a ground set forth in 8 C.F.R. § 239.2(a)). As discussed
27  above, in Plaintiff's case, on March 8, 2008, the Honorable Carol A. King at the San Francisco
28  Immigration Court denied DHS's motion to terminate removal proceedings because she

1   determined that the DHS had not provided a valid reason under 8 C.F.R. § 239.2(a) for requesting
2   dismissal of the proceedings, and, in 2014, the BIA reversed that decision based on the existence
3   of the prior removal order alone. ECF 36 at 10–11. Again, "[t]he Ninth Circuit did not review the
4   BIA's decision, and no other court upheld the validity of that decision." ECF 36 at 15. In light of
5   8 C.F.R. § 1239.2(c), the Court cannot find clear congressional authority for the unreviewable
6   discretionary power to terminate removal proceedings for reasons beyond those provided for in 8
7   C.F.R. § 239.2(a) which Defendants claim implicitly lies within the language of 8 U.S.C. §
8   1252(g). ECF 30 at 12; *see West Virginia*, 597 U.S. at 724. A reading of the statute which
9   permits discretionary decisions with respect to the decision to "commence proceedings" cannot be
10  read to grant discretionary authority to terminate proceedings without "transformative expansion"
11  of § 1252(g). *Id.*

12  Accordingly, the Court finds that § 1252(g) does not bar judicial review of Plaintiff's
13  challenge to the authority of the BIA to terminate removal proceedings.

14  **B.     Plaintiff's Claims Are Reviewable Under the APA**

15  Defendant next argues that the Court lacks jurisdiction over Plaintiff's claims under the
16  APA because the BIA's decision to terminate removal proceedings was not a "final agency action"
17  reviewable under 5 U.S.C. § 704. ECF 30 at 2. Instead, Defendants argue, the decision which
18  implicates the government's exercise of prosecutorial discretion, unreviewable under 5 U.S.C. §
19  701(a)(2). *Id.* Plaintiff contends that the BIA's decision constitutes a final agency action and re-
20  alleges that such a decision is not a matter of discretion under Section 1252(g). ECF 36 at 5.

21  **1. The BIA's Decision Is a Final Agency Action Subject to Review**

22  For purposes of determining review under the APA, the Court must resolve a point of
23  dispute between the parties: whether the BIA's decision to terminate Plaintiff's removal
24  proceedings constitutes a final agency action. ECF 30 at 2; ECF 36 at 4.

25  The district courts have subject matter jurisdiction under the APA to review "final agency
26  action." 5 U.S.C. § 704. An agency action is final if it is: (1) the "consummation" of the agency's
27  decision-making process and it is not "merely tentative or interlocutory" in nature; and (2) is an
28  action by which "rights or obligations have been determined" or from which "legal consequences

will flow." *Bennett v. Spear*, 520 U.S. 154, 178 (1997) (citations omitted). The Supreme Court has "long taken" a "pragmatic approach" to the question what *825 constitutes final agency action. *San Francisco Herring Ass'n v. Dep't of Interior*, 946 F.3d 564, 577-78 (9th Cir. 2019). Moreover, "[s]ection 704 of the APA provides for judicial review of '[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court.'" *Int'l Bhd. of Teamsters v. United States DOT*, 861 F.3d 944, 952 (9th Cir. 2017).

Here, the BIA's decision is a final agency action because it was a "definitive statement of [the agency's] position" on the issue of Plaintiff's removal proceedings. *Bell v. New Jersey*, 461 U.S. 773, 780 (1983). Moreover, the termination of the removal proceedings was an action by which "rights and obligations of the parties" had been determined. *Id*. The BIA's decision invalidated Plaintiff's immigration status, which had a direct and immediate effect on his day-to-day life, including the loss of his legal right to live and work in the United States. ECF 36 at 21. Moreover, Plaintiff has no other avenue for judicial review because, as explained by the Ninth Circuit, Plaintiff "seeks to create a new ground for judicial review." ECF 36 at 15; *see Lopez*, 40 F.4th at 999 (finding that the Court of Appeal does not have jurisdiction over the termination of removal proceedings).

Accordingly, the Court finds that the BIA's decision was a final agency action subject to judicial review under the APA.

### 2. The BIA's Decision Was Not Discretionary

The Court acknowledges that Congress explicitly precluded from APA review any "agency action . . . committed to agency discretion by law." 5 U.S.C. § 701(a)(2); *see also Morales de Soto v. Lynch*, 824 F.3d 822, 826 (9th Cir. 2016) (acknowledging that the court "cannot review the merits of [DHS's] exercise of its prosecutorial discretion"). However, contrary to Defendants' contention, the Court does not find that the BIA's decision at issue here is such an agency action.

As discussed above, unlike the decision to commence removal proceedings, the decision to terminate removal proceedings is not unreviewable under Section 701(a)(2) as an action "committed to agency discretion by law," because 8 C.F.R. § 239.2(a) sets the statutorily permissible grounds for termination. *See* discussion *infra* Section III.A.2. Therefore, 5 U.S.C. §

701(a)(2) does not bar judicial review because the BIA does not have unfettered discretion to terminate removal proceedings. 8 C.F.R. § 1239.2(c). At this stage of the proceedings, the Court follows the "long applied" and "strong presumption favoring judicial review of administrative action." *Mach Mining, LLC v. E.E.O.C.*, 575 U.S. 480, 489 (2015).

Accordingly, the Court finds that it may consider Plaintiff's APA claim as it pertains to the termination of removal proceedings.

### C. The Court May Supply Meaningful Relief to Plaintiff

Finally, Defendant argues that Plaintiff's claims are nonjusticiable because the Court cannot provide Plaintiff with any meaningful relief. ECF 30 at 3. Plaintiff argues that he maintains a personal stake in this matter because a favorable ruling by this Court gives him an opportunity to return to the United States. ECF 44 at 3.

Under Article III, § 2 of the Constitution, federal courts may adjudicate only "actual, ongoing cases or controversies." *Deakins v. Monaghan*, 484 U.S. 193, 199 (1988). The case or controversy requirement "subsists through all stages of federal judicial proceedings" and requires that the parties "continue to have a personal stake in the outcome of the lawsuit." *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (quoting *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477-78 (1990)). In addition to a direct challenge to his removal order, a noncitizen "can also establish a live controversy by demonstrating concrete collateral consequences from the removal." *Blandino-Medina v. Holder*, 712 F.3d 1338, 1342 (9th Cir. 2013) (citing *Zegarra-Gomez v. INS*, 314 F.3d 1124, 1127 (9th Cir. 2003). "[W]hile a court may not be able to return the parties to the status quo," the case "is not moot if the court can fashion some form of meaningful relief." *Dream Palace v. County of Maricopa*, 384 F.3d 990, 1000 (9th Cir. 2004) (internal citations and quotation marks omitted).

Here, Plaintiff does not ask the Court for an order that he be returned to the United States; instead, Plaintiff seeks an *opportunity* to fairly plead his case for some form of immigration relief. ECF 44 at 3–4. Courts have recognized that the deprivation of such an opportunity establishes a concrete injury for standing purposes. *De Sousa v. Dir. of U.S. Citizenship & Immigr. Servs.*, 720 F. Supp. 3d 794, 802 (N.D. Cal. 2024) ("[E]ven if USCIS ultimately decides not to grant [the

plaintiff] a green card, the 'lost opportunity is itself a concrete injury.'"); *See Abboud v. I.N.S.*, 140 F.3d 843, 847 (9th Cir. 1998) (stating the plaintiff "lost a significant opportunity" to receive an immigrant visa); *see also Hsiao v. Scalia*, 821 F. App'x 680, 683–84 (9th Cir. 2020) (stating that the plaintiff "lost a significant opportunity to proceed" in the visa process).

Accordingly, the Court finds that Plaintiff's claim is not mooted by his removal from the United States because he has a concrete interest in the opportunity for immigration relief.

## IV.    CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants' motion to dismiss Plaintiff's complaint under rule 12(b)(1).

On October 3, 2025, the parties jointly requested a stay until Congress has restored appropriations to the Department of Justice and the government shutdown ends. The Government further requested that, at that point, all current deadlines in this case be extended for a period of time commensurate with the duration of the lapse in appropriations – i.e., each deadline would be extended by the total number of days of the lapse in appropriations. ECF 42.

The stay was granted for all substantive proceedings scheduled after October 7, 2025. The stay will be lifted *no later than* January 29, 2026. ECF 46. All briefing deadlines were set aside and the previously set motion scheduled for January 20, 2025 was vacated. The hearing date will be re-set upon the stay being lifted. ECF 32, 42, 46.

Counsel for the Defendants is ordered to promptly notify the Court as soon as the government shutdown has ended and, if necessary, given the circumstances of this case, confer with opposing counsel and submit within two weeks a joint proposed schedule for the remainder of litigation.

//

//

//

1   In the alternative, the matter is specially set and continues to January 29, 2026 at 2:00 p.m.
2   for case management to set a hearing and briefing schedule for the motion for preliminary
3   injunction and/or dispositive motions.
4   A joint case management statement or status report is due *no later than* January 22, 2025.
5   IT IS SO ORDERED.
6   Dated: October 30, 2025

_____
TRINA L. THOMPSON
United States District Judge