UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIGUEL LOPEZ LUVIAN, | Case No. 25-cv-04035-TLT |
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANTS' SUMMARY JUDGMENT MOTION AND DENYING PLAINTIFF'S SUMMARY JUDGMENT MOTION** |
| PAMELA JO BONDI, et al., | |
| Defendants. | Re: Dkt. Nos. 58, 59 |

The claims underlying this case and an individual's future center around the statute of limitations and two words: *improvidently issued.*

The complex regulatory structure in the background of this case does little to clarify the issue. What follows is some of that background. An alien who unlawfully returns to the United States after having been removed under a prior order may subsequently be removed under the same order. The Department of Homeland Security ("DHS") has discretion to either reinstate the prior removal order or initiate new removal proceedings by issuing a Notice to Appear. Once DHS initiates removal proceedings, those proceedings may only terminate if a valid statutory basis for doing is presented to an immigration judge. One of those bases is that the Notice to Appear was *improvidently issued*. How do the applicable statutes and regulations define *improvidently issued*? They do not.

The government suggests that, categorically, a Notice to Appear may have been improvidently issued where a reinstated prior removal order exists. Plaintiff claims that a Notice to Appear cannot have been improvidently issued based on the mere existence of a prior reinstated removal order where DHS made an informed decision, aware of the prior removal order, to initiate removal proceedings.

All parties involved, and future litigants confronted with this ambiguity, would be served

by clarification from our partners in the lawmaking branch. Can it be, for example, as the government claims, that DHS may reinstate a prior removal order and expedite an alien's removal at *any time* following the initiation of removal proceedings, even after an alien has been granted relief such as cancellation of removal?[1]

More pertinent for purposes of the cross-motions for summary judgment motions pending before the Court, however, is 28 U.S.C. § 2401(a) which provides that, absent extraordinary circumstances, civil actions brought against the United States must be filed within six years of the alleged injury. The harm given rise to Plaintiff's complaint occurred on October 23, 2014. While not entirely convinced of the government's expansive interpretation of the term *improvidently issued*, the Court regrettably finds that the applicable six-year statute of limitations may not be tolled in this case. As such, Plaintiff's filing of the operative complaint on May 8, 2025, ties this Court's hands.

After review and careful consideration of the briefing, the arguments in open court, and the subsequent filings, the Court **GRANTS** Defendants' motion for summary judgment and **DENIES** Plaintiff's motion for summary judgment.

## I.    BACKGROUND

### A.    Procedural History

On May 8, 2025, Plaintiff filed the instant action against Attorney General Pamela Bondi and DHS Secretary Kristi Noem. ECF 1. Plaintiff alleges that the Defendants' decision to terminate his removal proceedings in 2014 constitute (1) a violation of the Administrative Procedures Act ("APA") and (2) a violation Plaintiff's right to due process under the Fifth Amendment of the Constitution. *Id*. ¶¶ 34–42.

On June 6, 2025, Plaintiff filed a motion for temporary restraining order, seeking to stay the removal of Plaintiff from the United States to Mexico pending a resolution of his case on the merits. ECF 8. On the same day, the Honorable District Judge Beth L. Freeman (as duty judge)

---

[1] Indeed, at oral argument, the government asserted that DHS may, at any time during the course of removal proceedings, reinstate a prior removal order and therefore move to terminate removal proceedings, even after an immigration judge has granted relief, such as cancellation of removal.

United States District Court
Northern District of California

set a briefing schedule and hearing on Plaintiff's motion. ECF 11.

Subsequently, the case was reassigned to this Court and on June 7, 2025, this Court issued an order granting Plaintiff's motion and enjoining Defendants from removing Plaintiff from the United States until the merits of Plaintiff's motion for preliminary injunction were resolved. ECF 12.

On June 10, 2025, the Court was notified that Plaintiff's removal to Mexico had already been completed. ECF 14. On the same day, the parties filed a stipulation to withdraw Plaintiff's motion for a temporary restraining order. *Id.* The Court granted the parties' stipulation and found that the requested relief was moot. ECF 17. No further emergency relief was requested. Thereafter, the Court set a briefing schedule on the Defendants' anticipated motion to dismiss.

Defendants filed the operative motion to dismiss on August 13, 2025. ECF 30. Plaintiff responded on September 10, 2025. ECF 36. Defendants filed a reply on September 24, 2025. ECF 40. The court held a hearing on Defendants' motion to dismiss on October 7, 2025. ECF 46.

The Court denied Defendants' motion to dismiss on October 30, 2026. ECF 49. A briefing schedule on dispositive motions was issued on December 17, 2026. ECF 52.

Both parties filed cross-motions for summary judgment on January 30, 2026. ECF 58; ECF 59. Each party timely opposed the summary judgment motions on February 20, 2026. ECF 60; ECF 61. Defendants filed a reply on February 27, 2026. ECF 62. Plaintiff did not file a reply brief.

The Court held oral argument on the motions on March 17, 2026. ECF 67.

### B.    Statutory Background

Before Congress enacted the Homeland Security Act of 2002, the Department of Justice ("DOJ") had both prosecutorial and adjudicative functions in enforcing the nation's immigration laws. *See* Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135. The Homeland Security Act transferred immigration enforcement authorities out of the DOJ and into a new "Department of Homeland Security" ("DHS"). *Id*. The Immigration and Nationality Act ("INA"), 8 U.S.C. 1101 et seq., grants DHS with exclusive authority to initiate removal proceedings against an alien. *See* 8 U.S.C. §1229a. The regular removal proceedings under section 1229a "commence"

3

when the Immigration and Custom Enforcement ("ICE"), the enforcement arm of the DHS, files the charging document known as the "notice to appear" with the immigration court. 8 C.F.R. 1003.14(a). The decision to "commence removal proceedings" involves unreviewable "exercise of prosecutorial discretion." *Matter of J-A-B- & I-J-V-A-*, 27 I. & N. Dec. 168 (BIA 2017).

Congress has also authorized DHS to use a streamlined removal procedure for removing aliens who unlawfully return to the United States after having been removed under a prior order of deportation, exclusion, or removal. 8 U.S.C. § 1231(a)(5). This so-called reinstatement of removal procedure under section 1231(a)(5) is not mandatory and "an ICE officer may decide to forgo reinstatement of a prior order of removal in favor of initiating new removal proceedings [under section 1229a], with the accompanying procedural right to counsel and a hearing in immigration court." *Villa-Anguisano v. Holder*, 727 F.3d 873, 878 (9th Cir. 2013). Thus, ICE officers "may exercise their discretion not to pursue streamlined reinstatement procedures." *Id*. at 879.

The immigration courts and the Board of Immigration Appeals ("Board") are part of the Executive Office for Immigration Review ("EOIR"), an agency within the Department of Justice ("DOJ"). 8 C.F.R. § 1003 (2018). Immigration judges are appointed by the Attorney General to conduct removal proceedings and to "act as the Attorney General's delegates in the cases that come before them." 8 C.F.R. § 1003.10(a). The immigration judges "exercise the powers and duties delegated to them by the [INA] and by the Attorney General through regulation" to decide "the individual cases before them…". 8 C.F.R. § 1003.10(b). And this authority includes dismissal or termination of removal proceedings if "consistent with law." *Matter of Ferreira*, 28 I. & N. Dec. 765, 767 (BIA 2023).

The Board "function[s] as an appellate body charged with the review of those administrative adjudications under the [INA] that the Attorney General may by regulation assign to it. 8 U.S.C. § 1003.1(d)(1). The Board is required to "resolve the questions before it in a manner that is timely, impartial, and consistent with the Act and regulations." *Id*. The regulations provide that "[e]xcept as Board decisions may be modified or overruled by the Board or the Attorney General, decisions of the Board and decisions of the Attorney General are binding on all officers and employees of DHS or immigration judges in the administration of the immigration laws of the

United States." 8 U.S.C. § 1003.1(g).

The INA and the governing regulations give broad discretion to DHS to initiate removal proceedings against an alien. *See Matter of Avetisyan*, 25 I. & N. Dec. 688 (BIA 2012). And "neither an [immigration judge] nor [the] Board may review a decision by the [DHS] to institute deportation or removal proceedings." *Matter of Bahta*, 22 I. & N. Dec. 1381, 1391 (BIA 2000) (citations omitted). But once removal proceedings commence, the immigration judge is authorized to dismiss the proceedings only in "specific circumstances consistent with the law and applicable regulation." *Matter of Sanchez-Herbert*, 26 I. & N. Dec. 43, 45 (BIA 2012). DHS must provide a valid regulatory reason for requesting dismissal. *Matter of G-N-C-*, 22 I. & N. Dec. 281, 284 (BIA 1998). The DHS's authority to request dismissal is prescribed in 8 C.F.R. § 1239.2(c) and is limited to the grounds set forth in 8 C.F.R. § 239.2(a). In pertinent part, the immigration judge may dismiss removal proceedings against an alien if DHS demonstrates that the notice to appear was "improvidently issued." *Matter of W-C-B-*, 24 I. & N. Dec. 118, 122 (BIA 2007) (quoting 8 C.F.R. § 239.2(a)(6).

### C.    Factual Background

Plaintiff is a 48-year-old native and citizen of Mexico who had lived in the United States for more than 27 years.  ECF 1 ("Compl.") ¶ 19.  He was first apprehended by DHS in October 1996 near Otay Mesa, California.  ECF 14 at 2.  Shortly thereafter, an immigration judge ordered Plaintiff's removal and DHS removed Plaintiff from the United States.  *Id.*

The record contains some inconsistencies regarding the date Plaintiff re-entered the United States after his removal in 1996.  *Id.*  The Honorable Carol A. King ("Immigration Judge"), the Immigration Judge who reviewed Plaintiff's application for cancelation of removal found that Plaintiff had re-entered the United States by February 1997.  ECF 52-8 at 6.

Ten year later, on February 15, 2007, Plaintiff filed a Form I-485, application for adjustment of status, with the Citizenship & Immigration Services ("USCIS").  Compl. ¶ 20. USCIS denied Plaintiff's application for adjustment of status.  *Id*. ¶ 21.  It determined that he was ineligible because he had made a false claim to U.S. citizenship in attempting to enter the United States years earlier.  *Id.*

In September 2007, Department of Homeland Security ("DHS") initiated removal proceedings by serving Plaintiff with a Notice to Appear that charged him with removal as a noncitizen lacking a valid immigrant visa or entry document, and for making a false claim to United States citizenship. *Id*. Plaintiff conceded removability on the former charge but denied removability on the later charge. *Id*. He subsequently applied for cancellation of removal. *Id*.

On January 22, 2008, the DHS filed a motion to dismiss removal proceedings with the Immigration Court arguing that the Notice to Appear was "improvidently issued" under 8 C.F.R. § 239.2(a)(6) because Plaintiff had previously been removed from the United States pursuant to a valid removal order. *Id*. ¶ 22. On March 8, 2008, the Immigration Judge at the San Francisco Immigration Court, the Honorable Carol A. King ("Immigration Judge"), denied DHS's motion to dismiss because she determined that DHS had not provided a valid reason under the regulations for requesting dismissal of the proceedings. *Id.* ¶ 23. She found that DHS had made an informed choice in placing Plaintiff in removal proceedings and was not relying on any "misleading information or "mistaken [legal] assumption" when it served Plaintiff with the Notice to Appear. *Id.*

DHS renewed its motion on July 21, 2009. *Id*. ¶ 24. The Immigration Judge denied DHS's renewed motion on January 6, 2010, noting that DHS had "made a considered choice to begin [r]emoval [p]roceedings rather than reinstating the prior order since all the necessary information was at its fingertips when the choice was made." ECF 59-7 at 2. The Immigration Judge also noted that Plaintiff's prior removal order "appear[ed] to be an order prepared in anticipation of issuance, but not an actual order of reinstatement." *Id*. at 3.

On November 5, 2012, after an evidentiary hearing, the Immigration Judge granted Plaintiff's application for cancellation of removal as a nonpermanent resident noncitizen under 8 U.S.C. § 1229b(b)(1). ECF 59-8. She found that Plaintiff qualified for cancellation of removal because he had demonstrated physical presence in the United States for the preceding ten years, good moral character, lack of a disqualifying criminal conviction, and that he had qualifying U.S. citizen relatives. *Id*. Moreover, the Immigration Judge found that Plaintiff's removal to Mexico would result in "exceptional and extremely unusual hardship" to his wife and children—

United States District Court
Northern District of California

specifically his then-11-year-old son who suffers from a learning disability and would experience severe emotional problems by Plaintiff's departure from the United States. *Id.*

DHS appealed the Immigration Judge's decision to the Board of Immigration Appeals (the "BIA"). *Id.* ¶ 27. On October 23, 2014, the BIA sustained DHS's administrative appeal from the Immigration Judge's decision and dismissed Plaintiff's removal proceedings. *Id.* The BIA determined "improvidently issued" was not limited to "a judgment arrived at by using misleading information or mistaken assumption," but also to "decisions made without adequate considerations." ECF 59-12. The BIA determined that immigration caselaw established that "an NTA [could be] improvidently issued where removal proceedings were not necessary because a prior deportation order could be reinstated." ECF 59-12 at 3.

On November 1, 2016, an ICE officer served Plaintiff with a Notice of Intent/Decision to Reinstate Prior Order ("Form I-871") referencing the 1996 removal order. *Id.* ¶ 28. Plaintiff sought to appeal the BIA's decision in November 2016 before withdrawing from that appeal. Plaintiff's reinstated removal order became final on November 20, 2018. ECF 58 at 10. Plaintiff again sought an appeal in December 2018. *See Miguel Lopez Luvian v. Merrick Garland*, No. 18-73286 (9th Cir. Dec. 6, 2018). The Ninth Circuit held that the court lacked jurisdiction under 8 U.S.C. § 1252(a)(5) because the BIA's decision was not a removal order and not reviewable in connection with reinstatement. *See Lopez v. Garland*, 40 F.4th 996, 1001 (9th Cir. 2022).

On March 7, 2023, Plaintiff filed a petition for writ of certiorari for review of the Ninth Circuit's decision. *See Miguel Lopez Luvian v. Merrick Garland*, No. 22-871, Pet. for Writ of Cert. (Mar. 7, 2023). On May 15, 2023, the Supreme Court denied the writ of certiorari from the judgment of the United States Court of Appeals for the Ninth Circuit.

What is clear from this record is that Plaintiff followed a circuitous path to reach this Court. Setbacks, delays, surprises and mishaps (not always of Plaintiff's own making) created one dilemma after another. At each stage, constant effort, keen attention, and nimbleness in the face of evolving laws and regulations were required to seek relief. The unfortunate reality is that many noncitizens faced with this timeline are paralyzed by the prospect of multi-year litigation and often lack the resources available to the federal government to efficiently guard against abuse.

7

Throughout the process of Plaintiff appealing the BIA's decision to the Ninth Circuit and the Ninth Circuits decision to the United States Supreme Court, Plaintiff continued to reside in the United States with his family. Before his removal, Plaintiff resided in Livermore, California with his wife and their three children, all of whom are citizens of the United States. S*ee* ECF 8-2, Declaration of Rosa Maria Lopez ("Lopez Decl."), at 1. He was gainfully employed as a welder at a local winery for over two decades. Compl. ¶ 19. The Court granted Plaintiff's motion seeking the immediate cessation of his removal, unknowingly, after DHS had already released Plaintiff in Mexico. ECF 14 at 3–4.

As efforts to resolve the issues discussed above led Plaintiff nowhere, and with new problems arising as soon as old ones were resolved, a sense of futility and frustration could have overwhelmed Plaintiff. Yet, Plaintiff has remained motivated to reunite with his family.

## II.    LEGAL STANDARD

### A.    Motion for Summary Judgment; Federal Rule of Civil Procedure 56

Federal Rule of Civil Procedure 56 provides that a "court shall grant summary judgment [to a moving party] if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is genuine only if there is sufficient evidence for a reasonable jury to find for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Id.* at 252. At the summary judgment stage, evidence must be viewed in the light most favorable to the nonmoving party and all justifiable inferences are to be drawn in the nonmovant's favor. *See id.* at 255.

Where a plaintiff moves for summary judgment on claims that it has brought (i.e., for which it has the burden of proof), it "must prove each element essential of the claims ... by undisputed facts." *Cabo Distrib. Co. v. Brady*, 821 F. Supp. 601, 607 (N.D. Cal. 1992); *see also Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (stating that, "if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure all of the essential elements of the

United States District Court
Northern District of California

claim or defense to warrant judgment in his favor") (emphasis omitted).

Where a defendant moves for summary judgment based on a claim for which the plaintiff bears the burden of proof, the defendant need only point to the plaintiff's failure "to make a showing sufficient to establish the existence of an element essential to [the plaintiff's] case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## III.    DISCUSSION

Defendants' arguments can be placed into one of three categories, jurisdictional, merit-based arguments, and redressability.  ECF 58.  First, Defendants argue that this Court is precluded from revieing Plaintiff's claims because the claims are (A) barred by the APA's statute of limitations, (B) barred by 8 U.S.C. section 1252(b)(9), (c) barred by 8 U.S.C. 1252(g), (D) barred under the APA as an action committed to agency discretion by law.  *Id.*  Second, Defendants argue that the BIA's decision was consistent with the statute and regulations, and, thus, did not violate the APA.  ECF 58 at 20.  Finally, Defendants argue that Plaintiffs claim fails because it is not redressable.  ECF 58 at 22.

Plaintiff argues that the BIA's decision, which relied on the argument that the availability of the reinstatement of an earlier removal order provided the DHS a valid regulatory reason for seeking dismissal of removal proceedings, was arbitrary, capricious, and an abuse of discretion under the APA.  ECF 59 at 15.  In opposition to Defendants' motion Plaintiff argues that neither the INA, nor the APA, provide jurisdictional bars to Plaintiff's claim.  ECF 61 at 2–3.

The Court begins its discussion with the dispositive element of this case, the statute of limitations under the APA.

### A.    Plaintiff's Claims Are Subject to the APA's Six Year Statute of Limitations

5 U.S.C. § 702 authorizes persons injured by agency action to obtain judicial review by suing the United States or one of its agencies, officers, or employees. *Corner Post, Inc. v. Board of Governors of Federal Reserve System*, 603 U.S. 799, 80 (2024).  28 U.S.C. section 2401(a) states, in relevant part, that "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." "A complaint under the APA for judicial review of agency action is a 'civil action' within the meaning of

section 2401(a)." *Avery v. Dep't of the Army*, No. 14-CV-01077, 2015 WL 4451591, at *4 (N.D. Cal. July 20, 2015) (citing *Jersey Heights Neighborhood Ass'n v. Glendening*, 174 F.3d 180, 186 (4th Cir.1999)). Thus, a six-year statute of limitations pursuant to 28 U.S.C. § 2401(a) applies to actions, such as this action, brought against the federal government or its officers pursuant to the APA. *Hells Canyon Pres. Council v. U.S. Forest Serv.*, 593 F.3d 923, 930 (9th Cir.2010). Accordingly, the six-year statute of limitations applies here.

### B.    Plaintiff's Injury Accrued on October 23, 2014

The parties first dispute the date Plaintiff's cause of action under the APA accrued. Plaintiff argues that his action accrued on July 19, 2022, when the U.S. Court of Appeals for the Ninth Circuit dismissed his petition for review for lack of jurisdiction. ECF 65 at 1. Defendant argues that Plaintiff's cause of action accrued on October 23, 2014, when the BIA terminated proceedings. ECF 58 at 13.

In *Wind River Mining Corps*, the Ninth Circuit held that challenges to "procedural violation[s] in the adoption of a regulation or other agency action" must be brought within six years of agency rulemaking, while challenges to "the substance of an agency's decision should be brought "within six years of the agency's application of the disputed decision to the [Plaintiff]." 946 F.2d at 715–16. In *Corner Post, Inc. v. Board of Governors of Federal Reserve System*, the Supreme Court clarified that the six-year time period does not begin "until [the plaintiff] suffers an injury from [the] final agency action." 603 U.S. 799, 809 (2024); *see id.* at 881 ("[W]hen Congress used the phrase 'right of action first accrues' in § 2401(a), it was well understood that a claim does not 'accrue' as soon as the defendant acts, but only after the plaintiff suffers the injury required to press her claim in court.").

Here, Plaintiff challenges the BIA's decision issued on October 23, 2014. ECF 59 at 15 ("The Board's decision was arbitrary, capricious, and an abuse of discretion under the APA because the Board violated the plain text of the regulations, misinterpreted its binding precedent, failed to consider the relevant factors, and failed to provide a reasoned explanation for its actions."). Thus, the alleged injurious agency action is the issuance of the October 23, 2014 decision itself. That is, Plaintiff is alleged to have been injured by an arbitrary and capricious

10

United States District Court
Northern District of California

ruling from the BIA which would have immediately interfered with Plaintiffs' rights as an alien in the United States. The subsequent removal of Plaintiff from the United States is not the subject of Plaintiff challenge here. Plaintiff offers an alternative accrual date of July 19, 2022, the date the Ninth Circuit dismissed his petition for review of the BIA's decision. However, in holding that it lacked jurisdiction over Plaintiff's challenge of the BIA's decision, the Ninth Circuit did not separately injure Plaintiff for purposes of the APA; nor did the Ninth Circuit alter the finality of the BIA decision's effect on Plaintiff. Plaintiff could have brought this action under the APA in October 2014 or any time within six years of the BIA's 2014 decision.

Plaintiff argues Plaintiff's action should be considered timely because he filed his appeal in the Ninth Circuit on December 6, 2018, and the Ninth Circuit should have transferred the action to a district court pursuant to 28 U.S.C. § 1631. Section 1631, in relevant part, provides that when an appeal "including a petition for review of administrative action," is filed in a court that lacks jurisdiction, "the court shall, if it is in the interest of justice, transfer such action . . . to any other such court in which . . . the action could have been brought at the time it was filed or noticed." However, Plaintiff did not raise an APA claim in his appeal to the Ninth Circuit. *See Miguel Lopez Luvian v. Merrick Garland*, Case No. 18-73286. Thus, even if the Court were to find that the action should have been transferred under section 1631, that action would not have come before this Court as an APA claim. The Court cannot assume an APA claim was preserved in Plaintiff's filings at the Ninth Circuit where none appeared.

Accordingly, the Court finds that the accrual date of Plaintiff's injury is October 23, 2014. Because Plaintiff did not file his complaint containing the APA claim until May 8, 2025, his claim for judicial review under the APA is time-barred and must be dismissed unless he is eligible for equitable tolling.

**C.    Plaintiff Has Not Shown that Equitable Tolling Excuses the Untimely Filing**

Plaintiff claims that equitable tolling applies because Plaintiff reasonably believed that section1252(b)(9)'s zipper clause gave the court of appeals exclusive jurisdiction to review the Board's termination decision. ECF 60 at 14. Plaintiff argues that, in accordance with this belief, he timely filed a petition with the Ninth Circuit to pursue his rights. *Id.* Defendants argue that

11

Plaintiff's mistaken belief in the law does not excuse his filing of this action outside of the statute of limitations. ECF 62 at 5. Moreover, Defendants argue that Plaintiff did not diligently pursue his rights because Plaintiff filed this action three years after the Ninth Circuit's denial of his claim in 2022. *Id.* at 8.

In *Cedars–Sinai Med. Ctr. v. Shalala,* the Ninth Circuit ruled that 28 U.S.C. § 2401(a) is not jurisdictional in nature and is subject to traditional exceptions, such as equitable tolling. 125 F.3d 765, 770 (9th Cir.1997). "[T]he threshold necessary to trigger equitable tolling . . . is very high, lest the exceptions swallow the rule." *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002) (internal quotation and citation omitted); *see also Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990) (courts apply the doctrine of equitable tolling "sparingly."). To establish equitable tolling, Plaintiff must show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). A "[p]laintiff's mistake of law as to [] jurisdiction [does not] constitute an extraordinary circumstance." *Dartora v. United States*, 522 F. Supp. 3d 823, 829 (E.D. Wash. 2021). An "extraordinary circumstance" must be outside the litigant's control. *Id.* (citing *Menominee Indian Tribe of Wisc. v. United States*, 577 U.S. 250 (2016); *see also Avery v. Dep't of the Army,* No. 14-CV-01077, 2015 WL 4451591, at *5 (N.D. Cal. July 20, 2015) (same). Mistakes of law are not enough. *Weaver v. Alameida*, 225 F. App'x 598, 599 (9th Cir. 2007).

The pending decision on Plaintiff's appeal of the BIA's October 2014 order did not constitute "extraordinary circumstances" when Plaintiff could have pursued an APA claim in 2014. The Court acknowledges the complexities of immigration law. *See Castro-O' Ryan v. INS*, 847 F.2d 1307, 1312 (9th Cir. 1988) (observing that, "[w]ith only a small degree of hyperbole, the immigration laws have been termed 'second only to the Internal Revenue Code in complexity'"). Moreover, the Court acknowledges the novelty of Plaintiff's claim. *Lopez v. Garland*, 40 F.4th 996, 999 (9th Cir. 2022) ("Lopez seeks to create a new ground for judicial review in the reinstatement context beyond those we have previously recognized."). However, Plaintiff provides no evidence of circumstances beyond his control that prevented him from bringing an APA claim within the six-year statute of limitations prescribed by statute.

Accordingly, the Court finds that there were no "extraordinary circumstances" which prevented Plaintiff from pursuing this APA claim in district court.

**IV.    CONCLUSION**

For the reasons stated above, the Court finds that Plaintiff's claim under the APA is **barred** by the applicable six-year statute of limitations. Plaintiff's reasonable, but mistaken, belief that his claims were only reviewable by the Ninth Circuit does not excuse the statute of limitations in this case. Accordingly, the Court **GRANTS** Defendants' motion for summary judgment and **DENIES** Plaintiff's motion for summary judgment.

Plaintiff came to the United States pursuing an all-too-common dream of establishing roots in and contributing productively to this country, the only country he has called home for nearly three decades and one that has historically welcomed the contributions of hard-working immigrants. Instead of guiding this Court on a steady path towards the clear equities of this case, current immigration law and the applicable statute of limitations leave Plaintiff without relief from any error Defendants may have committed in whisking him out of the United States.

Current law persuaded Plaintiff to channel his claims through a bureaucratic labyrinth which deprives so many Americans-to-be of a prompt remedy when agencies inevitably make mistakes. Such obstacles impose heavy burdens on all noncitizens seeking permeant status in this country. Yet, misplaced foresight, delays, and unforeseen circumstances cost an entire family financial stability and will result in generational trauma.

It is incumbent upon all of us to heed Martin Luther King Jr.'s words – justice delayed is justice denied.

This Order resolves ECF 58 and ECF 59.

The Clerk shall terminate this case.

IT IS SO ORDERED.

Dated: April 3, 2026

_____
TRINA L. THOMPSON
United States District Judge

United States District Court
Northern District of California

13